The first case today is 14-1216, United States v. Anthony Soto-Rivera. Good morning, Mr. Rivera. Good morning, Your Honor. May you please take order? First of all, Your Honor, I would like to reserve three minutes for rebuttal if the Court may allow. You may. Yes. I hope you have enjoyed your stay here in Puerto Rico so far. Thank you. And I'm always the first one, so I'm a little bit nervous. So I'm going to start, Your Honor, with a good premise from the Supreme Court. Okay. Just to break the ice. The good premise is the life of the law is experience. When I read that sentence, I fell in love with the premise. Why experience? Because the law is always in constant evolution. That's what we find in the case of Johnson. In the case of Johnson, the Supreme Court considered the Armed Career Criminal Act of 1984 and its requirements. And under its requirements, it found that the so-called residual clause was vague and, as a consequence, unconstitutional because it violated the due process clause. Following that decision, the circuit has found in previous opinions, and the United States must concede, that the Armed Career Criminal Act under Section 924E2B, the language is almost identical to the language found under Section 4B1.2A of the guidelines under the career offender, in particular under the definition of violent felony or violent offense. Based on that, we can look at the residual clause found also on the guidelines, and the government has to concede that in other cases, it has also found that Johnson applies to the guidelines. And we don't have any other option but to find that this definition is also constitutionally deficient. Why this residual clause should be found constitutionally deficient? Easy, because of the public policy involved here is fairness. And to establish fairness, like Sotomayor found in the case of Pooh, is we have to establish a uniformity system, which is the policy of the guidelines. The purpose of the guidelines, one of the main purposes is to establish some kind of uniformity in the system. If we don't secure this nationwide consistency, and we don't establish a system that is uniform across the board, across the United States, which was the purpose of the guidelines, and that's why the guidelines constantly evolve. Counsel, do you want to address the government's argument that because of the guideline commentary, defining possession of a machine gun as a crime of violence, that that saves the sentence in this case? Yes, Your Honor, I will address immediately. The guidelines have the force of law, because if the court doesn't first follow the guidelines, the case will be overturned. The case of the Supreme Court of Stinson has found that the commentaries and the notes that interpret the guidelines that are consistent with the text of the guidelines should be given equal force. In this instance, we believe that the commentaries are inconsistent with the findings of the Supreme Court of Stinson. In this instance, in Made in Johnson, this belief is so strong that when you review the sentencing commission proposed guidelines, you will find that the commission is recommending that the residual clause and those commentaries be deleted from the guidelines. Why? Because again, based on experience, we don't want to take the discretion of the court. But we want to secure uniformity, and the residual clause, there's no way or manner that we could secure that uniformity in the findings of the sentencing court, because it takes the case beyond the elements of the offense, beyond the ordinary case. And this is why... That's a decamp argument that you could have made below, but didn't. Your Honor, yes, the decamp argument in this case, we didn't make that argument, and we believe, nevertheless, that under the plain error, we believe that we can overcome... But it wasn't just that you didn't raise it, you conceded that you were subject to the career offender guideline below. The defense counsel conceded, that is correct, Your Honor. So there was nothing, so that seems like waiver, rather than just not raising it. And then there needs to be some reason why justice requires us to overlook it. With respect to decamp, I don't see what the, immediately, what the reason would be, since that could have been raised below, but wasn't. I take it your argument is that... Your Honor, you're correct. Under decamp, that's the perfect argument. It would have been a waiver. But Johnson came afterward. But Johnson doesn't have anything to do with decamp. Johnson is just about whether the residual clause no longer applies because it's vague. Yes, but, Your Honor, if we consider that under decamp, the court addresses the modified categorical approach, okay, and the categorical approach, and when Johnson was decided, this case hasn't been decided yet. So it becomes a plain error once Johnson comes into life, Your Honor. Well, I'm just saying, with respect to what issue? With respect to whether the application note survives if the residual clause is unlawful? That is correct. Or with respect to whether decamp is the analysis we have to use so that you can never look at the application clause, even if the residual clause is good? Your Honor, if we look at the Johnson decision, and we analogize the Johnson decision with the instance scenario, it falls square to the requirements, Your Honor. If we take the residual clause, then decamp becomes smooth in this particular case. And that's why I'm bringing the plain error, because the court is correct. The defendant didn't bring that matter below. On the fourth prong of plain error, could you just explain as to the fourth prong of it? Why under the fourth prong? I understand the argument that you're making, which is that the error would be plain, because the application note can only apply the residual clause. The residual clause is no longer there. There's no way to read the residual clause to apply the rest of the guideline. I get that. And then I take it the argument is it's prejudicial because it could have affected the calculation. Okay, but on the fourth prong. Since you conceded, the defendant conceded below that they were subject to the career offender guideline. What is the reason of the fourth prong? Why, when there's a clear application note, it's perfectly obvious what the sentencing commission thought about how to treat a machine gun. It was evident to the defendant that they were going to sentence him this way because of the machine gun. Why under the fourth prong, when you don't raise it below, should we say that the justice of the whole system should be such that in a case like this, we shouldn't count the application note? Your Honor, the best way to answer this is the main reason why I love our forefathers. The Constitution was based on fairness. And fairness in this case affects the integrity and the public reputation of your judicial system. If the court does not consider that fairness has been adversely affected in this case. I guess that's what I'm asking, how has it been? Since you had perfect notice that the machine gun was covered by the application note, the application note is still there and can be read. What is unfair in this case, notwithstanding Johnson? What is unfair about saying be one thing if you had objected below, but since you didn't, what is unfair about holding you to the application note since you had perfect knowledge? The application note is simply inconsistent with the test of the guidelines once you take out the residual cause. And it would be unfair to subject me to a punishment based on a cause that has been found to be unconstitutional because it's saying has been found to be vague. I guess what I'm asking is the reason it's unconstitutional is because it's vague. That is correct. But the note is not vague. The note is perfectly clear. So that's what I'm trying to figure out. What's the connection between the reg being vague, the note being perfectly clear, that makes it unfair to hold you to the terms of the note? Because without that residual clause, when you read that particular note, even though the note might be clear, okay, when the notes or the commentaries are inconsistent with the text of the guideline, the text of the guideline should control. And that's why you have this inconsistent creates a scenario of unfairness. And this unfairness is what we want to cure and challenge this court to take the hard way. And the conservative way in this case doesn't work, Your Honor. And even the sentencing commission has proposed new amendments because the guidelines have been periodically amended to improve the system, Your Honor. And we need to consider the fairness principle in this case that also includes the systematic consistency of the system, Your Honor. It is correct that your client had five prior adult felony convictions. My client, if we look at the... Can you start with a yes or no? Yes, Your Honor. The answer is yes. Yes, he has several prior offenses, Your Honor. But when you look at the seal appendix that includes the pre-sentence investigation report, and you look below at the description, it mentions that the court didn't have the records available. And the records were material for the court. If we were going to apply the CAMS, we needed the records to be able to establish the categorical approach. And without those records, the court, with all due respect, I respect the judge, but the judge was blind. He should have continued the sentencing hearing until he had those records in order to be able or in a position to establish the categorical approach or the CAMS modified approach. Doesn't this go to fairness? That is correct, Your Honor. And that's the main argument. Because if we did not consider fairness, then the due process cost would not apply to sentencing. But the basic principle here involved is fairness. And we want to provide not only fair notice to the individuals that an offense is present, the limits of an offense or the parameters of an offense, but also we want to provide a fair judgment. We want to provide a sentencing system that is free of arbitrariness, inconsistency, because our goal here is to establish a sentencing system that is with uniformity. Counsel, before your time runs out, was there any indication by the judge, because we're certainly mindful of the fact that the guidelines are discretionary and they're not mandatory. Is there anything that the judge said at sentencing that would lead us to believe that he would have imposed the same sentence regardless? Your Honor, I was reading out the decision and the court seems to follow the Flores-Machicoti arguments. However, before the court could make a variance or a departure, the court had to first be correct in the guidelines determination. And we believe in this case the court was not correct in the guidelines determinations and the transcripts do not reveal whether the court would have imposed the same sentence. Thank you, Counsel. Good morning. May it please the court. My name is Tiffany Monrose and I represent the United States. We ask that you affirm the judgment of the district court for the reasons set forth in our brief. Counsel, could you start out by pinning down what the government is conceding? Yes. The government is conceding that the sentencing, the residual clause of the sentencing guideline in section 4B1.2 is similar to the residual clause in the Armed Career Criminal Act. And in Johnson, the Supreme Court determined that that clause was vague. The government in its supplemental acknowledged that the clause was vague, that the residual clause in the career offender guideline was also vague. However, the government raised an alternative argument in its responsive brief, which relied primarily on the commentary to section 4B1.2. Under the commentary, a felon in possession of a firearm is not a crime of violence unless it's one of the firearms listed in 26 U.S.C. section 5845A. And one of those firearms listed is a machine gun. And the appellant Soto acknowledged in this case that the firearm found in his vehicle was his and that the firearm was modified to fire a machine gun. But wasn't that commentary done to try to flesh out what crimes would be applicable to the residual clause? No, I would say no. The Supreme Court in Stinson held that the commentary is a binding interpretation of the phrase crime of violence. It was not necessarily tethered to the residual clause. The court in Stinson found that previously in Stinson, the Supreme Court was looking at the amendment to the commentary in which the sentencing commission determined that career felons in possession of a firearm did not constitute a crime of violence. The court also held that amendments to the commentary are binding on the federal courts. In this case, the subsequent amendment in 2004 changed the earlier commentary so that crimes like this were not a crime of violence. The incident offense like that one committed by Soto now constitutes a crime of violence. And the Supreme Court in Stinson held that such commentaries are binding unless inconsistent with a federal statute, the Constitution, or the guidelines. How can the commentary be a reference to anything but the residual clause, just as a textual matter? So the first clause of the first part of the definition of crime of violence under the guideline, if I have it right, is the element of threatened use of physical force. So how does that fit with the application note? The application note doesn't seem to be fleshing out what is attempted use or threatened use of physical force, does it? Okay, so then the second thing is burglary of a dwelling, arson, or extortion involves use of explosive. That's before you get to the residual clause. The application note can't be fleshing that out. No, and my brief acknowledges that. So then why isn't all that's left for it to be fleshing out the residual clause? Yes, well, I would ask this court to follow the logic and reasoning of the U.S. Supreme Court in Stinson. In that case, the guidelines as it stood did not include a felon in possession of a firearm, did not address whether or not a felon in possession of a firearm constituted a crime of violence. But that's the residual clause. That was why that issue arises. Could you read the residual clause to include a felon in possession of a firearm? I take it that the application note is saying no, unless it's a machine gun. But that's just giving content to the residual clause, which you're saying is gone. So it looks like we have an application note to a nonexistent guideline. No, I would not say that. I wouldn't say that my reading of Stinson or the guidelines suggest that the commentary was specifically tied to the residual clause. Well, what else could it be tied to? Well, it's either got to be the definition of violence, the use, attempted use or threatened use of physical force against the person of another, or it's got to be tied to one of those four listed offenses. Yes. Going back to Stinson, the Supreme Court found that even though the guideline text may not compel the amendment's inclusion of the offense in question, it was binding nonetheless. Well, it's binding if it's not inconsistent with the guideline. Absolutely. I guess we're just having trouble trying to figure out how you can argue that with the residual clause gone, it can now be consistent with the guideline. There isn't a specific provision that the appellant has identified in which it conflicts. In the appellant's supplemental brief, he never addressed whether or not the guideline commentary was inconsistent. I think he's arguing it's inconsistent with the first part, which says attempted use or threatened use of physical force, because it can't be given content to that phrase. And he says it's inconsistent with the four listed offenses, because it can't be defining them. And he says it is consistent with the residual clause, but the residual clause has no application, which you're conceding. Right. So what's left of the rule, it seems to be inconsistent with if you'd like us to apply it. That's what we're trying to figure out. Why is that wrong? Well, the arguments that he made in his reply to my supplemental was not in his original supplemental brief. He is reaffirming those arguments now at oral argument that he filed in his supplemental reply. We did not have an opportunity to address that. I don't think that the ‑‑ I strongly ask the court to ‑‑ I don't think the court in Stinson found that the reason why the commentary was valid was based upon the residual clause. My reading of the opinion is not like that. What was it based on? It was based upon the fact that the commentary is similar to legislative rules adopted by agencies. And Congress has delegated the authority to the Sentencing Commission to establish these type of commentaries. Even the amendments to the commentaries are still binding on federal courts. And in looking at it in that way, the court ‑‑ They're not binding in a vacuum. They're not binding in a vacuum. Right. Absolutely. And the court, by saying that the commentary does not have to be compelled by the text, the court gave guidance to this court and other courts that while it's not explicitly listed in the language of Section 4B1.2, the Sentencing Commission is allowed to amplify a reading of the phrase crime of violence. I understand the court's concern in whether or not this is sort of creating another case of ambiguity of some kind because it has to relate back to something. And that's I think the argument that the appellant made in his reply to my supplemental, that it has to be tethered to something. But that's inconsistent with what the Supreme Court stated in Stinson. That the text does not have to compel a reading of the commentary in that way. And I believe that's the strongest argument that the government ‑‑ In this case, not only do we have the appellant conceding that a crime of violence can be ‑‑ A felon in possession of a firearm can be characterized as a crime of violence. He concedes that point. He also concedes that he was in possession of a firearm. He now wants to ask this court to overlook his earlier representations. And I would ask under Jimenez and Pelletier that the court does not allow him to turn his back on his representations to the district court. He challenges also his prior convictions, prior controlled substance convictions. Let me ask you something. Council just mentioned that at the sentencing, the district judge didn't have any Shepard documents. Is that true? The court did not consult any Shepard documents, but the appellant didn't ask the court to consult any documents. The Supreme Court has said that the burden is on the government to come forward with the Shepard documents. I understand that it may have been waived, but I'm trying to figure out how totally troublesome this petition is. I don't know where this particular sentencing may have been at this point. Well, in this case, when he acknowledges that the career offender guideline applies, he does not challenge whether or not his prior convictions constitute predicate offenses to justify the application of the career offender guideline. The court would be without any sort of inkling or indication that the defendant would challenge any convictions and would certainly not, sui sponte on his own, look at those documents. Charging documents, transcripts, plea agreements, if the defendant is not challenging that. There was a case that was not cited in my brief but was decided by this court in which a similar set of circumstances where a defendant did not specifically challenge whether or not his prior convictions constituted a crime of violence under the career offender guideline. The defendant did not ask the court to look at any Shepard documents. And this court did not found that it was proper and this court was not required to reverse. I would ask to be able to submit a supplemental, a 28-J supplemental letter. But here he conceded that the offender guideline applied. It wasn't just that he was silent at the time. He actually said the career offender guideline does apply. His counsel represented that to the district court? Yes. And it was only until he filed his brief that he suggested that the district court fail to gather additional information regarding the substance of those offenses. And the argument he essentially makes is asking this court to look at the underlying facts even though he asked the court to apply the categorical approach which doesn't require this court to look at the underlying facts. So essentially he was asking the court to apply a modified categorical approach while simultaneously asking that the categorical approach apply to substantial offenses. And normally, at least my reading of this court's precedence, is that the categorical approach and the modified categorical approach applies when the court is analyzing whether or not a crime constitutes a crime of violence. In this case, under the career offender guideline, it can apply whether if you have two prior convictions for a controlled substance or a crime of violence. In this case, the court, the district court looked at his prior criminal history and did not look at the underlying facts. And so to now say that we should have looked at Shepard documents even though it normally doesn't apply when you have a, at least based on this court's precedence, when you have a controlled substance conviction, it's sort of, you know, he's kind of marrying two arguments together. And I don't know of any cases from this circuit in which that has applied. Where you, where there's a controlled substance conviction that's a predicate for his career offender guideline applying in the case, I don't know that the court then turns to the Shepard documents, especially when the defendant doesn't challenge that and raises it for the first time on appeal. And therefore, we ask that the court would affirm it, affirm his, affirm his conviction and the application of the career offender guideline. The court was reasonable in looking at the representations of his attorney, the fact that he did not challenge the PSR. It now represents competent evidence in which the district court can consider in determining whether or not he has convictions which qualify, which justify the application of the career offender guideline. The court, I think would have to read the mind of the defendant or his counsel in figuring out that he has a, he has a career offender guideline. And if he disagreed, but if you look at the express representations to the court, it would be contrary to the representations made by the appellant on appeal. And for the reasons stated. If we disagree, two things, just so I make sure I'm understanding your argument. You agree the offense of conviction here has to qualify as a crime of violence. In other words, we can't avoid the residual clause issue. Well, you see, the residual clause issue was an additional argument that the government made. The district court did not rely on the residual clause to apply the career offender guideline. But I believe that the court can reach a resolution of this case without analyzing the residual clause. Just walk me through how, because the offense of conviction here was the gun crime only, right? Yes. So that has to be a crime of violence. Yes. And the only basis for that to be a crime of violence is, I guess, the application note, that's your argument? Yes. Okay. If we disagreed, or I disagreed with you about the argument about whether the application note could have any force once you conceded the residual clause is gone. What's our standard review? Are we on plan error review? I would submit that it's de novo. Because the defendant in this case did not make an objection. Actually, he made representations to the court that the correct standard to apply was the career offender guideline based on his prior convictions. It's not a case where, you know, I guess, I don't know if I would say he waived or not. I would say he either forfeited the argument, but he had an opportunity to address it, and he chose not to. He chose to make an alternative argument. So we should apply plan error or not? I'm just trying to figure it out. In my brief, I argued de novo, but I would say that... Assuming we applied plan error, under the fourth prong of the plan error test, does the government have any argument that if the error was plan or obvious, and if he was prejudiced by it, that nonetheless he should lose? Yes, he should lose. Why? Assume that the error is plan or obvious because the residual clause is gone and you can't apply the application. No, he was prejudiced by it because it would affect the guidelines calculation. There's still a fourth prong under the plan error test. Does the government have any argument that under the fourth prong he should lose? Well, under the appellant's own... In the appellant's opening brief, he argues that the calculations would have... That the calculations by the parties in the plea agreement were incorrect. And that if the correct calculations were applied, the sentence... The total offense level would have been 26 rather than 24. And if you subtract three points for acceptance of responsibility, the total offense level would remain 23, which was the calculation that the district court made. Essentially, the sentence would have been the same, whether the career offender guideline applied or did not apply. And that's an argument that the appellant made in his brief. The overall system, the justice system, is not compromised in this case by affirming his conviction because of the representations that he made to the district court, asking them to... Acknowledging that the career offender guideline applied. Acknowledging that he had two prior convictions which justified the application of that guideline. To now allow him to about-face would be contrary to this court's rulings in Jimenez and Pelletier. Thank you. Thank you. Thank you. May it please the court again. Thank you. Very briefly, Your Honor. The first point, Your Honor, is that when we look at Johnson, we have to remember that in Johnson, the court considered under ACCA the possession of Saul Off's shotgun, which was also in the commentaries of the guidelines. And in this case, the defendant was arrested with a machine gun. In Johnson, the court took away the residual clause, and as a consequence, it found that the predicate offense wasn't a violent offense. And that is important to analyze Johnson when we try to compare the application notes because if you look at the commentaries of the guidelines, you will find that once the residual clause is gone, the commentaries become inconsistent with the text of the law. If we were to remand, if, couldn't the district court gather the required documents and consider all five prior felony convictions? Yes, the court can always consider prior convictions. That is correct, Your Honor. And wouldn't that amount to qualify under ACCA? No, Your Honor, because we don't have, in this case, that issue was not considered, and we don't have, we don't know, when I read the PSI, I honestly cannot tell the court what the convictions were based on. Because one thing are the original charges, and the other thing is what the defendant actually pled guilty to. And I don't have that material at hand. The other point Your Honor, I make, is that the court has to consider the issues made today under the novel review. We have to consider whether the guidelines were correctly applied or not. In this case, we believe that the guidelines were not correctly applied, and that moves us to plain error. And I recommend the court, I was reading some cases last night, and I recommend the court to look at the case, it's not from the First Circuit, it's a case from the Tenth Circuit, which mentions and supports or grounds is the case of United States v. Madrid. M-A-D-R-I-D, and it will be the site under Westlaw is 2015 Westlaw 6647060. Under this case, the court found that if the guidelines are not correctly applied and the defendant is sentenced to a longer sentence based on the wrong application of the guidelines, there is no fairness. And if there is no fairness, we comply with the four prongs of the plain error standard. Thank you. And we really hope that you have a great day in Puerto Rico. Thank you.